757 P.2d 225

**SINCLAIR & COMPANY, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**Raymond GURULE, Defendant-Appellant.**

**No. 16219.**

Court of Appeals of Idaho.

June 1, 1988.

Gleason D. Anderson, Burley, for defendant-appellant.

Harry Turner, Twin Falls, for plaintiff-respondent.

SWANSTROM, Judge.

Sinclair & Company, Inc., a futures commission merchant, obtained a judgment against Raymond Gurule for the debit balance of his customer account. On appeal, Gurule contends: the district court lacked subject matter jurisdiction; Sinclair's claim is not enforceable as a matter of public policy; Sinclair has no corporate authority to engage in the business of commodity trading or futures contracts; and the district court erred in refusing to quash Sinclair's writ of attachment. We affirm.

On February 2, 1983, Gurule executed a customer agreement with Sinclair, under which a trading account was opened in his name. For the next seven months, Gurule used the services of Sinclair to enter into a series of buying and selling silver futures contracts. The traditional futures contract is an agreement between a seller (called a "short") and a buyer (called a "long") that the seller will deliver a commodity to the buyer at a time and price specified in the agreement, and the buyer will accept and pay for the commodity at the specified time. 1 PHILLIP M. JOHNSON, COMMODITIES REGULATION § 1.03 at 8 (1982) (hereinafter cited as JOHNSON).

While futures contracts create a right to deliver or demand delivery, it is uncommon for the parties to exercise that right. Instead, approximately ninety-five percent of all futures contracts are extinguished through a market operation called "offset." Under this procedure, a party to a contract will enter the market a second time to acquire the same type of contract but bearing an obligation opposite to his first transaction. These two transactions are said to offset each other and the party is excused from both obligations. If a market price movement has occurred between the first and second transactions, however, so that different contract prices are involved, offset will not be complete until the money difference is settled. JOHNSON, *supra*, § 1.04 at 9. Gurule neither made nor took delivery of any silver; rather, each contract was settled by an offsetting transaction on the New York Commodity Exchange.

In August of 1983, Gurule bought three silver futures contracts with a December delivery date. During his ownership of these contracts the price of silver dropped dramatically. On October 5, 1983, Gurule sold his three futures contracts, realizing a loss of $43,600 which resulted in a debit balance in his customer account of $18,275. Sinclair was obligated to cover the debit balance and sued Gurule to recover it.

In November, 1984, Gurule moved to dismiss the action for lack of subject matter jurisdiction, and petitioned for removal to the United States District Court for Idaho. Gurule's motion to dismiss was denied, and the United States District Court for Idaho remanded the matter to the state court. The case proceeded to trial, resulting in judgment for Sinclair. Gurule timely filed notice of appeal and, pursuant to I.C. § 31–3220(1), requested a waiver of prepayment of fees and costs for appeal, claiming he was indigent. The district court determined that waiver of fees and costs was not appropriate and certified that Gurule's

appeal was not taken in good faith. *See* I.C. § 31–3220(2).

Gurule's issues on appeal present questions of law; in reviewing such questions we exercise free review. *Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3.2 (Idaho Law Foundation, Inc. 1985).

## JURISDICTION

Gurule's challenge to the district court's subject matter jurisdiction is three-fold. First, Gurule maintains that the Commodity Exchange Act, 7 U.S.C. §§ 1 through 26, vests exclusive jurisdiction in all commodity trading actions in either the Commodity Futures Trading Commission or the federal district courts. Second, Gurule asserts that under the customer agreement the Illinois courts are the proper forum for this action. Finally, Gurule submits that no contract exists between the parties.

For ease of analysis we begin by examining Gurule's claim that no contract exists. Gurule asserts broadly that the "customer's agreement" which he signed at Sinclair's request is not a "contract" and Sinclair did not intend it to be a contract between the parties. In spite of this latter assertion, Gurule raises no real factual issue about either party's intentions. The only legal issues raised concerning the agreement, which need be discussed, are whether the contract is valid and enforceable in Idaho state courts. We will turn to those issues.

The question whether federal law preempts state actions is a question of law. The 1974 Commodity Exchange Act (CEA) created the Commodity Futures Trading Commission (CFTC) and granted the CFTC "exclusive jurisdiction" over the *regulation* of commodities. This preempted all would-be regulators at every level of government. *See Mallen v. Merrill Lynch Futures, Inc.*, 623 F.Supp. 203 (N.D.Ga. 1985). While Congress granted the CFTC exclusive *regulatory* jurisdiction, it also provided broader *judicial* jurisdiction: "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2. Gurule also cites 7 U.S.C. § 25 as providing exclusive federal court jurisdiction. That section provides federal district courts with original jurisdiction for actions "brought under this section." *See* 7 U.S.C. § 25(c).

Several federal and state courts have concluded that state common law claims are not preempted by the CEA. *See Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281 (8th Cir.1984); *Mallen v. Merrill Lynch Futures, Inc., supra; Zieg v. Shearson/American Express, Inc.*, 592 F.Supp. 612 (E.D.Va.1984); *Patry v. Rosenthal & Company*, 534 F.Supp. 545 (D.Kan.1982); *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.*, 705 P.2d 988 (Colo.App.1985), *rev'd on other grounds*, 737 P.2d 1106, (Colo.1987); *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 662 P.2d 553 (1983). The CFTC is not authorized to entertain claims other than those alleging violations of the CEA or CFTC regulations. State courts have subject matter jurisdiction over traditional contract actions, a garden variety matter of state common law. *Schor v. Commodity Futures Trading Commission*, 740 F.2d 1262 (D.C.Cir.1984), *vacated and remanded*, 473 U.S. 922, 105 S.Ct. 3551, 87 L.Ed.2d 674 (Mem.) (1985), *reinstated*, 770 F.2d 211 (D.C.Cir.1985) (construing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). We agree with these decisions and hold that the CEA has not preempted this contract action.

Finally, Gurule claims that the parties agreed to be subject to the jurisdiction of Illinois courts, not Idaho courts. This is based on a clause in the customer agreement that states: "The provisions of this agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by, the laws of the state of Illinois." This boilerplate clause merely specifies the applicable substantive law; it does not purport to confer exclusive jurisdiction on the Illinois courts. *See Sall*

v. *G.H. Miller & Co.*, 612 F.Supp. 1499 (D.Colo.1985) (construing a clause with similar language). Idaho district courts have original jurisdiction over claims arising from contracts executed within this state for the purpose of transacting any business within this state. IDAHO CONST. art. V, § 20. *Compare* I.C. § 5–514 (acts providing personal jurisdiction). We hold that the district court had subject matter jurisdiction in this case. We have not been presented with any issue involving a conflict between Idaho and Illinois substantive law.

## ENFORCEABILITY OF CONTRACT

■ Gurule maintains that futures transactions, in which delivery of the commodity is not intended, constitute gambling and wagering. Such contracts, he claims, are void and unenforceable as against public policy. This presents a question of law.

The United States Supreme Court has held that offsetting transactions on the exchange have the legal effect of a delivery and thus are not invalidated by state wagering statutes. *Board of Trade v. Christie Grain and Stock Co.*, 198 U.S. 236, 25 S.Ct. 637, 49 L.Ed. 1031 (1905). Moreover, with passage of the CEA, the federal government has moved to occupy the entire field of commodities futures traded on federally regulated exchanges. The purpose is to foster commodity markets. Consequently, a state should not treat commodity transactions as "gambling" because such treatment could destroy the market. *See Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F.Supp. 202 (N.D.Ala.1981). We decline to hold that commodity transactions are unenforceable as a matter of public policy. We think just the opposite is true.

Furthermore, we find the contract here was enforceable.

In futures contracts, whether satisfied by offset or delivery, the party is responsible for the *total change in value* of the contract while he owned it. For instance, if a person acquires a silver *fu-*

*tures* contract to buy the commodity at $20 per ounce, and the price of silver declines to $15 per ounce during his ownership of the contract, he will be obligated—whether on offset or delivery—for the entire $5 per ounce loss that he has incurred. [Emphasis original.]

JOHNSON, § 1.07 at 17. Under the customer agreement executed by Gurule, he agreed to "discharge all his obligations" and "pay in full his debit balance or indebtedness" to Sinclair. We hold that Sinclair had an enforceable contract claim against Gurule.

## SINCLAIR'S AUTHORITY

Gurule questions whether Sinclair had corporate authority to engage in commodity and futures trading. Gurule asserts that the State of Idaho has not given Sinclair specific authority to deal in commodities and that Sinclair's articles of incorporation confer no such power. Simply put, Gurule is asserting that Sinclair's commodity trading business is ultra vires. This is a question of law.

Sinclair was incorporated under the laws of the State of Idaho on October 8, 1975. Idaho Code § 31–114,[1] in effect at the time of Sinclair's incorporation, provided the following:

1. A corporation which has been formed under this act, ... shall have authority to perform only such acts as are necessary or proper to accomplish its purposes and which are not repugnant to law;

2. Without limiting or enlarging the grant of authority contained in subdivision 1 of this section, it is hereby provided that such corporation shall have authority:

. . . .

i. To enter into contracts or obligations of any type or kind essential, necessary or proper to the transaction of its ordinary affairs, or for the purposes of the corporation;

---

1. Idaho Code § 30–114 was repealed in 1979. Idaho Code § 30–1–4 of the Idaho Business Cor-

poration Act now provides for the grant of corporate authority.

j.  To conduct business in this state, other states, District of Columbia, territories and colonies of the United States and in foreign countries, and to have one or more offices and places of business out of this state, and to acquire, receive, hold, purchase, lease, mortgage, dispose of and/or convey real and personal property situate out of this state, provided such powers are included within the objects set forth in its articles of incorporation;

k.  To do all acts permitted by this act, and all such other acts as are necessary and expedient to accomplish its stated purposes.

While a corporation is granted authority to accomplish its lawful purposes, a corporation's power to act must be construed by reference to the purposes expressed or implied in its articles of incorporation. *E.g., Riley v. Callahan Mining Co.*, 28 Idaho 525, 155 P. 665 (1916). Sinclair's articles of incorporation state the following purposes:

(a)  To engage in the general securities business and to do all things connected therewith and incidental thereto.

(b)  To exercise all authority and to perform all acts authorized under the provisions of Section 30–114 of the Idaho Code. [Underlining original.]

It appears clear to us that Sinclair has authority and power to engage in the general securities business and perform any lawful purpose authorized under I.C. § 30–114. The quoted language of that section is broad enough to include commodity trading and futures contracts as lawful purposes. We hold that Sinclair had authority and power to deal in commodity trading and futures contracts.

### WRIT OF ATTACHMENT

Sinclair filed its complaint against Gurule on November 21, 1983, and immediately applied for a temporary restraining order and writ of attachment under I.C. §§ 8–501 to 8–540. Pursuant to I.C. § 8–502(d) the court issued a temporary restraining order barring Gurule from encumbering or disposing of certain assets conditioned upon the filing of an undertaking by Sinclair, as required by I.R.C.P. 65(c), in the amount of $10,000. A corporate surety bond was filed the same date.

On December 7, following a hearing, Sinclair obtained a prejudgment order for writ of attachment on one of Gurule's automobiles. The court ordered that the $10,000 bond "previously filed ... by the plaintiff shall be continued until further order of the court." Accordingly, a writ of attachment was issued on December 8, 1983. No new undertaking for the writ of attachment, required by I.C. § 8–503, was filed by Sinclair at the time. No objection to the existing undertaking was made by Gurule until September 10, 1984, when Gurule moved to quash the writ of attachment because no bond had been filed. This prompted Sinclair to obtain and file on September 20 an "attachment bond" specifically referring to I.C. § 8–503, the statute requiring such bonds. On October 3, 1984, the district court denied Gurule's motion because Sinclair had by then filed the required attachment bond. The adequacy of that bond has not been challenged.

Gurule contends that the district court erred in failing to quash the writ of attachment for lack of an "attachment bond" when the writ was issued. Thus, Gurule has presented a narrow legal issue as to the validity of the attachment, at least with respect to the time period before a proper bond was posted. However, we are not persuaded that this issue need be addressed in this appeal. At oral argument Gurule's counsel was unable to show how this issue affects the judgment appealed from. No counterclaim was filed by Gurule for wrongful attachment and no third party has been shown to have any right to the attached property. Gurule has not contended that the attached property is exempt from execution. Accordingly, we decline to address the issue further.

Both sides have requested costs and attorney fees on appeal. Necessarily, Gurule's request is denied. Sinclair bases its request on the district court's certification that Gurule's appeal was not taken in good

faith. *See* I.C. § 31–3220(2). That section does not provide a right to attorney fees. We construe Sinclair's request as founded upon its belief that Gurule's appeal was without foundation. *See* I.C. § 12–121 and I.R.C.P. 54(e)(1).

Attorney fees will be awarded to the prevailing party on appeal when we are left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). In our view Gurule's appeal was frivolous and without foundation. Accordingly, we award attorney fees on appeal to Sinclair, the amount to be determined under I.A.R. 41(d).

The district court's judgment is affirmed. Costs to Sinclair.

WALTERS, C.J., and BURNETT, J., concur.