97 P.3d 428

Evan D. KARLSON and Debra Day Karlson, husband and wife, and Adam Day, a minor, Plaintiffs–Appellants,

v.

Jeffrey F. HARRIS; Charles and Peggy Mowers, husband and wife; and State of Idaho, Department of Transportation, Defendants–Respondents.

No. 27587.

Supreme Court of Idaho,
Boise, May 2004 Term.

July 1, 2004.

Rehearing Denied Sept. 3, 2004.

Lowell N. Hawkes, Chtd., Pocatello, for appellants. Lowell N. Hawkes argued.

Merrill & Merrill, Pocatello, for respondent Harris. David C. Nye argued.

Thomsen & Stephens Law Offices, Idaho Falls, for respondent Mowers. J. Michael Wheiler argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent State of Idaho. Mitchell W. Brown argued.

SCHROEDER, Justice.

This is a personal injury case based on negligence. Evan and Debra Karlson and Debra's son Adam Day (collectively "Karlsons") were injured in an automobile accident in which their vehicle struck a cow carcass near McCammon, Idaho. The Karlsons filed an action against the owners of the cow, the owners of the property from which the cow escaped and the State of Idaho to recover physical and emotional damages sustained in the accident. The jury returned a verdict in favor of the defendants, and the district court

denied the Karlsons' post-trial motions. The Karlsons appeal.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of October 10, 1997, Gary and Barbara Flaherty were driving south on I–15 in a semi tractor/trailer owned by L.W. Miller Transportation. As the Flahertys drove beneath the U.S. Highway 30 overpass of the McCammon Interchange, they collided with several head of cattle that had escaped a nearby pasture and migrated onto the interstate. The Karlsons were also traveling south on I–15 in a vehicle driven by Mr. Karlson. The Karlsons' vehicle collided with a cow carcass that had been struck and killed by the Flaherty's vehicle.

Jeff Harris (Harris) owned the cattle involved in the accident. Harris pastured the cattle on property owned by Charles and Peggy Mowers (Mowers). Following the accident, it was discovered that the gate to the pasture area had been broken. Harris believed that the cattle had been "spooked" or frightened into breaking the gate and fleeing the pasture. The morning after the accident, the Mowers allegedly discovered large unidentified paw prints in the snow mixed with cattle tracks. Mrs. Mowers took a picture of the paw prints.

Once they had escaped from the Mowers' property, some of the cattle gained access to I–15 by traveling down the southbound on-ramp at the McCammon Interchange. The Idaho Department of Transportation (IDOT) maintains the interchange. The on and off-ramps of this interchange had historically been equipped with cattle guards. However, IDOT removed the guards between 1987 and 1993 due to maintenance costs and a decreased need for cattle guards at this location.

The Karlsons filed a negligence action against Harris, the Mowers and the IDOT for physical and emotional injuries sustained during the accident. Following an eight-day trial, the jury found no negligence on the part of any defendant. The district court subsequently denied the Karlsons' consolidat-ed motion for judgment notwithstanding the verdict and for a new trial.

The Karlsons appeal, raising numerous issues encompassed within the questions of: (1) whether the district court abused its discretion in allowing the testimony of the Mowers' expert witnesses; (2) whether the district court erred in denying the Karlsons' motions for J.N.O.V. and for a new trial; and (3) whether the district court erred in failing to take judicial notice of the State's ownership of land adjacent to the McCammon Interchange. Each of the respondents seeks attorney fees.

## II.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING EXPERT TESTIMONY

### Standard of Review

■ Trial courts have "broad discretion in the admission of evidence at trial, and [their] decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion." *Empire Lumber Co. v. Thermal–Dynamic Towers, Inc.*, 132 Idaho 295, 304, 971 P.2d 1119, 1128 (1998). "The same standard applies to the admission of expert testimony." *Basic American, Inc. v. Shatila*, 133 Idaho 726, 743, 992 P.2d 175, 192 (1999) (citation omitted). In the case of an incorrect ruling regarding evidence, a new trial is merited only if the error affects a substantial right of one of the parties. I.R.C.P. 61; I.R.E. 103; *Hake v. DeLane*, 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990).

A. **The district court did not abuse its discretion in allowing the expert testimony of the Mowers' expert witnesses.**

The Karlsons claim that the district court committed prejudicial error in allowing the jury to hear speculative "predator theory" testimony from the Mowers' two expert witnesses, Warren Moore, a retired federal trapper, and Ed Duren, an expert in animal science. According to the Karlsons, these experts had no basis to testify regarding the

possibility that an advancing predator freightened the cattle on the night they escaped the Mowers' pasture. The Karlsons have the burden of showing that the district court committed error. *See Western Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002).

▮ The Karlsons claim that the district court failed to rule upon their motion *in limine* "[t]o exclude testimony of Ed Duren regarding ... conclusions relative to predators." In fact the district court deferred ruling on the motion to determine admissibility when the foundation for the testimony was either established or not. A trial court is entitled to wait and hear the actual foundation laid at trial prior to determining whether to admit or exclude an expert opinion. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 492, 943 P.2d 912, 918 (1997). In such cases, "counsel must continue to object as the evidence is presented." *State v. Hester*, 114 Idaho 688, 699, 760 P.2d 27, 38 (1988). The district court did not abuse its discretion. The district court was entitled to defer its ruling regarding the admissibility of Mr. Duren's testimony "until the case unfolds and there is a better record upon which to make [its] decision." *See Hester*, at 700, 760 P.2d at 39.

The Karlsons also assert that expert opinion testimony regarding the existence and/or origin of unidentified paw prints based on a photograph taken on the Mowers' property following the accident was inadmissible speculation. The Mowers testified that they discovered "large paw prints" that were "different than cow tracks" on their property following the cattle's escape. Mrs. Mowers took a photograph of the alleged prints which was admitted into evidence. According to the Karlsons, any expert opinions drawn from this photograph concerning the presence of predators on the Mowers' property on the night of the cattle's escape would be pure speculation because the photograph was not adequate to determine the existence, size, direction or origin of any type of paw print.

▮ The word "speculation" in relationship to testimony has been defined as "the art of theorizing about a matter as to which evidence is not sufficient for certain knowledge." BLACK'S LAW DICTIONARY 1255 (5th ed.1979). "An expert opinion that is speculative or unsubstantiated by facts in the record is inadmissible because it would not assist the trier of fact to understand the evidence or determine a fact that is at issue." *Id.* (citing *Bromley v. Garey*, 132 Idaho 807, 979 P.2d 1165 (1999)). Expert opinion that merely suggests possibilities would only invite conjecture and may be properly excluded. *Elce v. State*, 110 Idaho 361, 716 P.2d 505 (1986).

Moore was the only expert witness to testify on behalf of the Mowers regarding Mrs. Mowers' photograph. During his testimony, counsel for the Karlsons made only two objections, which were sustained by the district court. As a result, Moore was prevented from offering his expert opinion regarding the origin of the paw prints allegedly depicted in Mrs. Mowers' photo. The Karlsons made no further objection and did not move to strike the testimony. The Karlsons were granted the relief they sought based on the objections they raised at trial. To the extent that the Karlsons are attempting to raise additional challenges to Moore's testimony on appeal, those challenges are waived. *See Hanks v. Sawtelle Rentals, Inc.*, 133 Idaho 199, 204, 984 P.2d 122, 127 (1999).

The Karlsons assert that the district court erred in allowing Duren to offer his expert opinion based upon a hypothetical question asked by the Mowers' counsel. Following the testimony of Moore, the district court sought assurances from the Mowers' counsel that Duren would not base any of his testimony upon the testimony of Moore because "there's nothing here that I think is helpful to making any opinions." Despite the district court's stated position regarding the use of Moore's testimony, the Karlsons' claim that Duren was allowed to offer his expert opinion based upon a hypothetical set of facts, which contained Moore's excluded testimony regarding the type of predator tracks allegedly photographed on the Mowers' property following the accident.

A hypothetical question is "a form of question in which facts that an attorney claims or

assumes to have been proved are stated as a hypothesis and on which an expert is then asked to state an opinion." 31A Am.Jur.2d Expert and Opinion Evidence § 77 (2003). During direct examination, Duren was asked by the Mowers' defense counsel to assume the following facts:

Assume that the gate—that there's some, that there's some cattle pastured behind the Mowers' place, okay, on October 11, 1997. The facts I want you to assume are: 1. The gate and fence were of the type and quality of those in the May and July photographs that we've been talking about. Okay?

I want you to assume that the gate was stretched tight, the gate that's been taken out and removed, if you'd assumed that that was stretched tight. I want you to assume that there was a good water supply. I want you to assume that there was ample food.

I want you to assume that there were no bulls involved and that these cattle were all four months pregnant. None of them were in heat. Not all of them, but the cattle that were able to be in heat were pregnant.

I want you to assume it had been raining or snowing earlier, but it had stopped. There was no wind, no thunder or lightning.

I want you to assume that the gate was checked three or four—three to four p.m. in the afternoon, was in place and stretched tight.

I want you to assume that the cattle were checked just before dark. They were spread out between the two pasture areas that you've talked about. They were content.

I want you to assume that there was no barking dogs, no sounds of distress from the cattle between 8:30 and nine p.m. approximately. I want you to assume that dogs are not known to harass cattle in this pasture area.

I want you to assume that cattle got out of the enclosure sometime between nine and 9:30 p.m.

I want you to further assume that the gate stick, the end gate stick that holds the gate up next to the railroad tie, was broken in the middle, in half, broken all the way through. I want you to assume that the railroad tie post on the fence you can see in the photographs was pushed southwest and that the steel end post on the fence was pushed to the east.

I want you to further assume that cattle tracks through the garden area—that there were cattle tracks through the garden area that went then down the lane and up that embankment that you personally saw that you can see in Exhibit 15–A, that those tracks them led up to the guardrail. There were tracks to there and over on the other side of the guardrail and that there was cattle hair on the guardrail there.

I want you to further assume that there were large paw prints in the snow, that were not related to the cattle, in the garden area going the same direction as the cattle; that you would have seen those tracks the next morning. I want you to assume that the cattle would not normally go the direction that they went.

And I also want you to assume that the cattle were not familiar with the gate, which was broken.

Duren was asked to "formulate an opinion, based upon those assumed facts, as to what occurred regarding those cattle on the evening in question." Outside the presence of the jury, counsel for the Karlsons objected to this question on the basis of the district court's prior order regarding the use of Moore's testimony as foundation for Duren's expert opinion. The district court explained that its "order was [Duren is] not going to rely on anything that Warren Moore says about whether those were large paw prints or not." The Mowers' counsel responded that he did not question Duren regarding Moore's testimony. The Mowers' counsel reminded the district court that "Mrs. Mowers [had previously] testified that she saw a paw print that was four or five inches. That's all I'm talking about. That's a large paw print." The district court allowed Duren to testify that "something" chased the cattle out of the Mowers' pasture on the night of their escape. Duren was not allowed to offer an opinion

regarding what type of animal predators, if any, might have been the culprit.

▮ "The facts upon which a hypothetical question is based must be admitted by the adverse party or be supported in the evidence in the record at the time the question is propounded." *State v. Birrueta*, 101 Idaho 915, 916, 623 P.2d 1292, 1293 (1981) (citations omitted). The crux of the Karlsons' challenge to the hypothetical facts relates to the fact that Duren was asked to assume that there were "large paw prints in the snow, that were not related to the cattle." The Karlsons claim there was no evidence that this was true in the present case. The Karlsons' argument is not persuasive. Prior to Duren's testimony, both Mr. and Mrs. Mowers testified that they saw large paw prints on their property following the night of the accident. Mrs. Mowers testified regarding the shape, size and direction of these prints. Moore also testified prior to Duren's testimony that the area in which the Mowers' property is located had a high population of mountain lions during the time of the cattle's escape. Based on Mrs. Mowers' photograph, Moore testified, without objection, that the photo showed drag marks "where the animal drug its paw before it placed its paw on the—in the snow," which "is typical of a mountain lion." Based on the evidence admitted into evidence at the time the hypothetical question was propounded, the question was proper. An expert may base an opinion or inference upon facts or data "perceived by or made known to the expert at or before the hearing." I.R.E. 703. The district court did not abuse its discretion in allowing Duren to offer his expert opinion based on the described set of hypothetical facts.

### III.

### THE DISTRICT COURT DID NOT ERR IN DENYING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR THE MOTION FOR NEW TRIAL

#### A. Standard of Review

*Motion for Judgment Notwithstanding the Verdict*

▮ In reviewing the trial court's grant or denial of a judgment n.o.v., this Court applies the same standard as does the trial court when originally ruling on the motion. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). This Court is to review the record and draw all inferences from the evidence in a light most favorable to the non-moving party and determine whether substantial evidence exists to justify submitting the case to the jury. *Spence v. Howell*, 126 Idaho 763, 769, 890 P.2d 714, 720 (1995). The determination of whether the evidence before the Court is sufficient to create an issue of fact is a question of law. *Hudson v. Cobbs*, 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990). For evidence to be considered substantial the evidence must "be of such sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper." *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974). "The question is not whether there is literally no evidence supporting the party against whom the motion is made, but whether there is substantial evidence upon which the jury could properly find a verdict for that party." *Pocatello Auto Color, Inc. v. Akzo Coatings Inc.*, 127 Idaho 41, 45, 896 P.2d 949, 953 (1995) (quoting *Quick*, 111 Idaho at 763–64, 727 P.2d at 1191–92). If, after reviewing the evidence in the manner set forth above, the Court finds that there is substantial evidence to show that reasonable minds could have reached the same conclusion as did the jury, then the jury's verdict will be upheld. *Hudson*, 118 Idaho at 478, 797 P.2d at 1326.

▮ Upon a motion for judgment n.o.v., the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. *Pocatello Auto Color*, 127 Idaho at 44–45, 896 P.2d at 952–53. Thus, in ruling on the motion and determining the sufficiency of the evidence, the Court does not examine any conflicting evidence presented by the moving party to refute the non-moving party's claims. *Brand S Corp. v. King*, 102 Idaho 731, 733, 639 P.2d 429, 431 (1981).

*Motion for a New Trial*

The Karlsons sought a new trial based on I.R.C.P. 59(a)(1) and I.R.C.P. 59(a)(6). They

568

challenge only that portion of their motion for a new trial based on I.R.C.P. 59(a)(6), which provides:

A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons: . . .

(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

 A trial judge may grant a new trial based on I.R.C.P. Rule 59(a)(6) where "after he has weighed all the evidence, including his own determination of the credibility of the witnesses, he concludes the verdict is not in accord with his assessment of the clear weight of the evidence." *Quick v. Crane*, 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986). The trial court is given broad discretion in this ruling. *Id.* The trial judge may set aside the verdict even though there is substantial evidence to support it. *Id.* (citation omitted). In addition, the trial judge is not required to view the evidence in a light most favorable to the verdict-winner. *Id.* Addressing the considerable discretion given to the trial court in deciding motions for new trials, this Court has said:

"[t]he trial court may grant a new trial when it is satisfied the verdict is not supported by, or is contrary to, the evidence, or is convinced the verdict is not in accord with the clear weight of the evidence and that the ends of justice would be subserved by vacating it, or when the verdict is not in accord with either law or justice."

*Blaine v. Byers*, 91 Idaho 665, 671, 429 P.2d 397, 403 (1967) (citing *Tibbs v. City of Sandpoint*, 100 Idaho 667, 669, 603 P.2d 1001, 1003 (1979)). Furthermore, "[i]f having given en full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." *Quick*, 111 Idaho at 768, 727 P.2d at 1196.

 This Court has specifically outlined the standard of appellate review of a grant of a new trial under Rule 59(a)(6).

When considering an appeal from a district court's ruling on a motion for new trial,

this Court applies the abuse of discretion standard. *Bott v. Idaho State Building Authority*, 122 Idaho 471, 835 P.2d 1282 (1992). This Court consistently has recognized the district court's wide discretion to grant or refuse to grant a new trial, and, on appeal, this Court will not disturb a district court ruling, absent a showing of manifest abuse of that discretion. *First Realty & Investment Co. v. Rubert*, 100 Idaho 493, 600 P.2d 1149 (1979). Although this Court necessarily must review the evidence, it primarily focuses on the process by which the district court reached its decision, not on the result of the district court's decision. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Thus, the sequence of this Court's inquiry is:

(1) whether the district court correctly perceived the issue as one of discretion; (2) whether the district court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the district court reached its decision by an exercise of reason.

*Hughes v. State of Id. Dept. of Law*, 129 Idaho 558, 561, 929 P.2d 120, 123 (1996) (citing *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)). This Court's review of the evidence is not a weighing of the evidence.

The trial court is in a far better position to weigh the demeanor, credibility and testimony of witnesses, and the persuasiveness of all the evidence. Appellate review is necessarily more limited. While we must review the evidence, we are not in a position to "weigh" it as the trial court can.

*Quick*, 111 Idaho at 770, 727 P.2d at 1198 (citing *Dinneen v. Finch*, 100 Idaho 620, 626, 603 P.2d 575, 581 (1979)). The focus, instead, is on the process by which the court reached its result. *Hughes*, 129 Idaho at 561, 929 P.2d at 123.

**B. The district court applied the correct legal standard in deciding the Karlsons' motions.**

The Karlsons filed a consolidated motion for J.N.O.V. pursuant to I.R.C.P. 50(b) and

for a new trial pursuant to I.R.C.P. 59(a)(1) and (6). The motion for J.N.O.V. and for a new trial pursuant to I.R.C.P 59(6) was sought solely against the State, whereas the motion for new trial pursuant to I.R.C.P. 59(a)(1) was sought against all three defendants. The Karlsons' motions were denied.

On appeal the Karlsons challenge the district court's ruling as it relates to their I.R.C.P. 59(a)(6) motion for a new trial against the State. They argue that the district court abused its discretion by failing to analyze the I.R.C.P. 59(a)(6) motion for a new trial under the "against the clear weight of the evidence" standard applicable to such motions, and instead applied the more stringent "substantial evidence" standard applicable to a motion for J.N.O.V.

The district court issued a memorandum decision and order denying the Karlsons' post-trial motions. Recognizing that the Karlsons' motions required the application of differing legal standards, the district court explained:

> In this case, a motion for a judgment n.o.v. was joined by a motion for a new trial in conformance with the requirements of Idaho Rules of Civil Procedure 59(a) and Rule 50(b). *The two motions have wholly distinct functions and different standards govern their allowance.*

(emphasis added). The district court discussed in great detail this Court's holdings regarding the legal standards applicable to both a motion for J.N.O.V. *and* a motion for a new trial pursuant to I.R.C.P. 59(a)(1) and (6). It is clear from the district court's memorandum decision and order that it understood the correct legal standards for deciding the Karlsons' motion for J.N.O.V and motions for new trial.

The discussion section of the district court's memorandum decision is broken into six parts. Parts one and two discuss the Karlsons' motions for J.N.O.V. and for a new trial pursuant to I.R.C.P. 59(a)(6), respectively. As mentioned, these motions apply only to the State, and these motions are the only post-trial motions challenged by the Karlsons on appeal. Part one, entitled "The Verdict is not Erroneous as a Matter of Law," addresses the Karlsons' motion for J.N.O.V., which

was supported by allegations that "the jury had no evidence to find that the State was not negligent and therefore the verdict is erroneous." The district court summarized the Karlsons' theory of negligence (*i.e.*, the removal of the cattle guards from the McCammon Interchange) as well as the evidence presented by the State in support of the reasonableness of its actions. The district court concluded that, "[a]dmitting the truth of all of the State's evidence and drawing all of the inferences (legitimately drawn therefrom), in the favor of the State, there is substantial evidence to sustain the jury's verdict."

Part two, entitled "A New Trial is not justified by Insufficient Evidence," discusses the Karlsons' I.R.C.P. 59(a)(6) motion for a new trial, which was based on allegations that the evidence presented was insufficient to justify the jury's verdict of no negligence on the part of the IDOT. Without further recitation of the evidence, the district court wrote:

> The [Karlsons] also challenge *this same evidence* in the *alternative*, arguing that a new trial should be granted, because there was an "insufficiency of the evidence to justify the verdict." Idaho Rules of Civil Procedure Rule 59(a)(6). To grant a new trial the court must apply a two-prong test: (1) the court must find the verdict is against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict; and (2) the court must conclude that a retrial would produce a different result. *Evans v. State of Idaho, d/b/a Lava Hot Springs Foundations,* 135 Idaho 422, 18 P.3d 227 (Ct.App. 2001).
>
> *As discussed under part I. of this decision,* this Court cannot say that the jury's verdict is against the clear weight of the evidence. Furthermore, this Court cannot conclude that a retrial with the same evidence would produce a different result. There was no expert testimony presented at trial, suggesting that the State's conduct in taking out the cattle guard was negligent.

(emphasis added).

The Karlsons argue that the district court's analysis of the Karlsons' I.R.C.P.

59(a)(6) motion for a new trial is deficient as a matter of law because the district court failed to restate and reanalyze the same evidence under the legal standard applicable to such motions following its discussion of the Karlsons' motion for J.N.O.V. The Karlsons' argument is not persuasive. The full context of the district court's decision illustrates that the district court relied upon the same evidence in deciding both motions. It is without consequence that the district court chose to summarize this evidence within its discussion of the Karlsons' motion for J.N.O.V. and referred back to these facts when it decided the Karlsons' I.R.C.P. 59(a)(6) motion for a new trial. What is important is that the appropriate legal standards were both properly understood and applied by the district court. A trial court need not separately restate and reanalyze the same facts or evidence in deciding an I.R.C.P. 59(a)(6) motion for a new trial that were previously applied in deciding a motion for J.N.O.V. where a proper disposition of each motion necessarily rests upon the same facts or evidence. Therefore, the district court did not err in applying the applicable legal standard to the Karlsons' I.R.C.P. 59(a)(6) motion of a new trial.

### C. The jury's verdict of no negligence on the part of the State is supported by substantial competent evidence and is not against the clear weight of the evidence.

■ The Karlsons argue that, "the jury verdict of no negligence by *any* defendant is against the clear weight of the evidence." While this appears to challenge the jury's verdict as it pertains to all three defendants, the argument is limited to challenging the jury's finding of no negligence on the part of the State. When a party fails to support an issue with authority or argument, this Court will not consider it. *Young Elec. Sign Co. v. State, ex rel., Winder,* 135 Idaho 804, 810, 25 P.3d 117, 123 (2001) (citation omitted). The Court will not consider whether the jury verdict, as it pertains to Harris or the Mowers, is against the clear weight of the evidence.

■ The Karlsons assert that the State acted negligently when it removed the cattle guards from the McCammon Interchange, maintaining that the State breached this duty by failing to make an official inquiry or take other low cost measures (*i.e.,* caution signs and painted cattle guards) before removing the cattle guards from this location. The Karlsons further contend that their injuries were a foreseeable effect of the State's actions, and thus, the jury's verdict with regard to the State is against the clear weight of the evidence.

The district court concluded that the evidence established: (1) that cattle guards effectively deter cattle; (2) that cattle guards would have deterred cattle from I-15 on the night in question; and (3) that removing the cattle guard posed a heightened risk to motorists. The district court then considered the fact that the Karlsons "presented no expert testimony that the act of removing the cattle guards was negligence." Thus, "[a]ny inference of such negligence would have had to come from the mere fact that the guards were removed and the cattle got on the highway." The district court also discussed the State's stated rationale behind its decision to remove the cattle guards from the McCammon Interchange:

> At trial, the position of the State was that there was a decreasing need for cattle guards at this location due to (1) increased traffic at the interchange and (2) maintenance and safety concerns with regard to the cattle guard. The safety concerns were however not related to cattle on the interstate, but rather to deterioration of the cattle guard. The State's expert testified that (1) the design of the interchange was not lacking in any way, (2) even though the cattle guards were removed, the interchange was well designed and maintained, and (3) he saw no problem with removing the cattle guards.

The district court did not err in denying the Karlsons' motions for J.N.O.V. and for a new trial pursuant to I.R.C.P. 59(a)(6). In ruling on a motion for J.N.O.V. and determining the sufficiency of the evidence, the trial court does not examine any conflicting evidence presented by the moving party to

refute the non-moving party's claim. *Brand S Corp. v. King,* 102 Idaho 731, 733, 639 P.2d 429, 431 (1981). The moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. *Pocatello Auto Color Inc. v. Akzo Coatings Inc.,* 127 Idaho 41, 44–45, 896 P.2d, 949, 952–53. In this case, there is substantial evidence to sustain the jury's verdict of no negligence on the part of the State.

A district court's denial of a motion for a new trial is subject to abuse of discretion review. *Bott v. Idaho State Building Auth.,* 122 Idaho 471, 475, 835 P.2d 1282, 1286 (1992). It is clear that the district court perceived the issue as discretionary, acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it and reached its decision by an exercise of reason. The district court's denial of the Karlsons' post-trial motions is affirmed.

### IV.

### THE DISTRICT COURT DID NOT ERR IN FAILING TO TAKE JUDICIAL NOTICE OF THE STATE'S OWNERSHIP OF ADJACENT PROPERTY

█ The Karlsons argue that it was error for the district court not to take judicial notice and instruct the jury that property adjacent to the McCammon Interchange is owned and maintained by the State of Idaho. The State asserts that this issue is waived because the Karlsons failed to request that the district court take judicial notice of the State's ownership of the property in question. This Court will not address issues not raised before the trial court. *Highland Enterprises, Inc. v. Barker,* 133 Idaho 330, 341, 986 P.2d 996 (1999) (citing *Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1993)).

The record is arguable on the question of whether the Karlsons made a request for judicial notice before the district court. What is clear is that any such request was too late in the proceedings to require consideration. Judicial notice of the State's ownership was irrelevant to the issues as framed for trial. To the extent that there was an effort to raise a new issue, the effort was not timely.

### V.

### THE RESPONDENTS ARE ENTITLED TO ATTORNEY FEES ON APPEAL

█ All three respondents have requested attorney fees, claiming that the Karlsons' appeal is frivolous. An award of fees on appeal may be granted pursuant to I.A.R. 41(a) and I.C. § 12–121. Such an award is appropriate when this Court is left with an abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979); *Sinclair & Co., Inc. v. Gurule,* 114 Idaho 362, 757 P.2d 225 (Ct.App.1988).

█ The Karlsons' arguments on appeal are without foundation. Their challenge to the Mowers' expert witnesses calls into question the district court's exercise of discretion on an evidentiary ruling. There was no abuse of that discretion. Similarly, there is no substantial basis shown to conclude that the district court erred in denying their post-trial motions for J.N.O.V. or for a new trial. The Karlsons' have failed to establish that any issue regarding the district court's alleged failure to take judicial notice was timely and properly raised. The Karlsons appeal is an invitation for this Court to re-litigate and second-guess the proceedings below, including the jury's verdict and the district court's discretionary rulings. The appeal is unreasonable and without foundation. The respondents are entitled to attorney fees.

### VI.

### CONCLUSION

The judgment entered in the district court is affirmed. The respondents are awarded costs, including attorney fees on appeal.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.