116 P.3d 27

**Grant R. KIRK, a personal representative of the Estate of Kyle R. Kirk, and Roger Humphrey, as personal representative of the Estate of Bret A. Humphrey, Plaintiffs–Appellants,**

v.

**FORD MOTOR COMPANY, Defendant–Respondent.**

No. 30322.

Supreme Court of Idaho, Boise, April 2005 Term.

June 23, 2005.

Turner & Associates, P.S., Little Rock, Arkansas; Irvin, Myklebust, Savage & Brown, P.S., Pullman, Washington, attorneys for appellants. David W. Savage argued.

Huie, Fernambucq & Stewart, Birmingham, Alabama; Wheeler Trigg & Kennedy, PC, Denver, Colorado; Winston & Cashatt, Spokane, Washington, attorneys for respondent. Meriwether D. (Mike) Williams argued.

SCHROEDER, Chief Justice.

Grant R. Kirk & Roger Humphrey (the Kirks) appeal from a judgment entered pursuant to a jury verdict in favor of Ford Motor Company (Ford) in a product liability suit involving a 1991 Mazda Navajo. Ford cross-appeals.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 1999, Kyle R. Kirk (Kyle) was driving westbound on Interstate 90, a paved highway in Spokane County, Washington. He was apparently traveling about 85 miles per hour when the 1991 Mazda Navajo he was driving drifted onto the shoulder of the road. Bret A. Humphrey (Bret), was a passenger in the front seat, and Stacey Wagner (Stacey), was a passenger in the rear seat. Apparently, Bret, the front seat passenger, grabbed the steering wheel and attempted to correct the path of the vehicle, but the vehicle swerved out of control and rolled over. Kyle and Bret were ejected from the vehicle and killed. Stacey was also ejected but survived with serious injuries. Less than twenty days prior to the accident, Kyle had purchased the used Navajo from a Ford dealership in Coeur d'Alene, Idaho.

On July 16, 2001, the estates of Kyle and Bret filed suit against Ford and Mazda Motor Company of America, Inc. (Mazda). The Kirks sued on theories of negligence, strict liability and failure to adequately warn the occupants of the vehicle's unreasonable propensity to rollover during foreseeable driving maneuvers. The Navajo was manufactured by Ford but marketed by Mazda. Because there were no material differences between the 1991 Navajo and the 1991 Explorer, Mazda was dismissed from the suit. The dismissal stipulated that the lawsuit would be tried as though the vehicle carried the Explorer name and no party would implicate Mazda in the litigation.

On June 11, 2003, the Kirks filed a motion in limine to preclude all evidence related to seat belt use. The Kirks stipulated that they were not bringing any crashworthiness claims or allegations the vehicle's occupant restraint system was defective. The district judge granted the motion (Seat Belt Order). The Seat Belt Order prohibited the introduction of any information regarding the use or non-use of seat belts by the occupants absent court approval through a supplemental motion or a hearing outside the presence of the jury. The Seat Belt Order also acknowledged that the litigation would not involve any crashworthiness claims.

On August 14, 2003, the Kirks moved to amend their complaint to add a claim for

punitive damages. The district court granted the motion. The Kirks' amended complaint added punitive damages and spoliation claims. The spoliation claim alleged that Ford had intentionally destroyed internal data, referred to as ADAMS data, regarding the propensity of the 1991 Explorer to rollover. The Kirks subsequently moved to compel production of Ford Suspension Orders (Suspension Orders) issued by Ford's Office of General Counsel (OGC) concerning the handling of the ADAMS data.

The district court ordered an in-camera review of the Suspension Orders and denied the motion. The court allowed both parties to present direct evidence on the testing Ford had done and the destruction of the underlying ADAMS data but prohibited the parties from raising any issue at trial implicating the Suspension Orders. The Kirks stipulated to a dismissal of the spoliation claim as an independent cause of action.

On November 4, 2001, following the Kirks' case-in-chief, Ford moved for a directed verdict. The court denied the motion. At that hearing Ford indicated that it would call Edward Moffatt, Ph.D. (Moffatt), a biochemist, as an expert witness, indicating Moffatt would testify that the vehicle's occupants were unrestrained prior to the rollover and that had they been restrained they would have (1) not been ejected, (2) suffered substantially less injuries, and (3) all survived. Some of the discussion at that hearing related to the relevance of the seat belt testimony in light of the punitive damages claim made by the Kirks. The Kirks stated no objection to the proposed testimony at that time. Moffatt testified the next day consistent with Ford's disclosure. The Kirks did not object to Moffatt's testimony regarding seat belt evidence and stipulated in front of the jury the decedents were unbelted prior to the crash.

Following Ford's presentation of evidence, the Kirks retained Martha Bidez, Ph.D (Bidez), a seat belt and occupant kinematics expert, as a rebuttal witness. During a proffer in chambers, the Kirks stated Bidez would testify that the vehicle's seat belts (1) were not adequately designed, (2) had been recalled, and (3) would not have prevented Kyle and Bret's fatalities. The district court ordered that Bidez' testimony be limited to evidence the decedents would have died in the vehicle regardless of the seat belts. Bidez was not allowed to testify as to the alleged defective design of the belts.

At the close of trial the district court gave a limiting instruction, Jury Instruction No. 11, which instructed the jurors they could not consider the use of seat belts in evaluating either alleged contributory negligence of the decedents or causal issues related to their deaths. The jury was instructed that it could consider the fact the vehicle was equipped with functional seat belts for the purpose of determining whether the overall design of the vehicle was unreasonably dangerous. The jury returned a special verdict in favor of Ford on all claims. Ford filed a request for costs as a matter of right and discretionary costs. The district court awarded Ford $25,213.31 in costs as a matter of right and $1,312.50 in discretionary costs for a total award of $26,525.81. The Kirks appealed and filed a motion for new trial, which the district court denied. Ford cross-appealed the amount of the award of discretionary costs. This Court dismissed the cross-appeal.

The Kirks contend the district court erred in allowing Ford to introduce evidence the decedents were unbelted prior to the rollover, delaying in its ruling on the admissibility of seat belt evidence, giving Jury Instruction No. 11, limiting the rebuttal testimony of Bidez, failing to order production of the Suspension Orders, and precluding the Kirks from eliciting evidence at trial that Ford had destroyed the ADAMS data contrary to its own Corporate Records Management Manual (CRMM) and Suspension Orders. Ford disputes each of these claims.

## II.

### STANDARD OF REVIEW

■ Trial courts have broad discretion over the admission of evidence at trial, including expert testimony, and in determining whether or not to grant a motion to compel. I.R.C.P. 37(a)(2)(2004); *Karlson v. Harris*, 140 Idaho 561, 564, 97 P.3d 428, 431 (2004)(trial courts have broad discretion in

the admission of expert testimony)(citing *Basic Amer., Inc. v. Shatila,* 133 Idaho 726, 743, 992 P.2d 175, 191 (1999)); *Storm v. Spaulding,* 137 Idaho 145, 149, 44 P.3d 1200, 1204 (Ct.App.2002)(trial court's supervision of discovery is wholly discretionary) (citation omitted). Such decisions will only be reversed when there has been a clear abuse of discretion. *Karlson,* 140 Idaho at 564, 97 P.3d at 431 (citation omitted); *Storm,* 137 Idaho at 149, 44 P.3d at 1204. In reviewing whether or not a district court abused its discretion this Court determines:

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

> Appellate courts exercise free review over the question of whether a jury has been properly instructed. The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error.

*Vendelin v. Costco Wholesale Corp.,* 140 Idaho 416, 432, 95 P.3d 34, 50 (2004)(internal citations omitted).

### III.

### THE KIRKS WAIVED OBJECTION TO THE ADMISSION OF SEAT BELT EVIDENCE

█ In 1988 the legislature added I.C. § 49-673(8), which states:

> The failure to use a safety restraint shall not be considered under any circumstances as evidence of contributory or comparative negligence, nor shall such failure be admissible as evidence in any civil action with regard to negligence.

I.C. § 49-673(8)(2004). This statute codified the common law rule that evidence of seat belt use or non-use is inadmissible to show contributory negligence or a failure to mitigate damages in an automobile negligence action. *Quick v. Crane,* 111 Idaho 759, 780, 727 P.2d 1187, 1208 (1986); *Hansen v. Howard O. Miller, Inc.,* 93 Idaho 314, 318, 460 P.2d 739, 743 (1969). According to *Quick,* "[t]he reason for this rule is the lack of connection between failure to wear a seat belt and the occurrence of the accident." Quick, 111 Idaho at 780, 727 P.2d at 1208 (citing *Hansen,* 93 Idaho at 318, 460 P.2d at 743; *Barry v. Coca Cola Co.,* 99 N.J.Super. 270, 239 A.2d 273 (1967)). The Kirks obtained a favorable ruling on the issue of seat belt evidence in response to their motion in limine. However, at trial the district court allowed Ford's expert witness to testify that the decedents were unbelted at the time of the accident and that they would have survived the crash had they been belted. Ford contends that the Kirks failed to properly object to Moffatt's expert testimony and stipulated that the decedents were unbelted thereby waiving the issue for appeal.

█ When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded. *Gunter v. Murphy's Lounge, LLC,* 141 Idaho 16, 25, 105 P.3d 676, 685 (2005)(citing *Lanham v. Idaho Power Co.,* 130 Idaho 486, 492, 943 P.2d 912, 918 (1997)). If the trial court decides to wait and hear the actual foundation laid before determining whether to admit or exclude evidence, the moving party is required to continue to object as the evidence is presented. *Id.* (citing *State v. Hester,* 114 Idaho 688, 760 P.2d 27 (1988)); *Karlson,* 140 Idaho at 565, 97 P.3d at 432. The purpose behind this rule is that:

> [A] motion *in limine* is based on an alleged or anticipated factual scenario, [and] without the benefit of all the other actual evidence which will be admitted at trial, the trial judge will not always be able to make an informed decision regarding the admissibility of the evidence prior to the time the evidence is actually presented at trial.

*Hester,* 114 Idaho at 699, 760 P.2d at 38. If, however, the trial court unqualifiedly rules on the admissibility of evidence prior to trial no further objection is required to preserve the issue for appeal. *Id.* at 700, 760 P.2d at 39 (citing *Davidson v. Beco Corp.,* 112 Idaho 560, 733 P.2d 781 (Ct.App.1986) *rev'd and aff'd Davidson,* 114 Idaho 107, 753 P.2d 1253 (1987)).

The district court originally granted the Kirks' motion in limine regarding seat belt evidence. However, this grant was qualified by the following language, "[e]xcept as the Court may permit by supplemental motion prior to trial or at trial and heard outside of the hearing of the jury ..." During trial and outside the presence of the jury, Ford reminded the court of its intention to call Moffatt to the stand as an expert witness. Part of this discussion involved the admissibility of seat belt evidence in regards to the addition of a punitive damage claim by the Kirks. Ford's intention to present seat belt evidence was clearly stated. The Kirks did not state an objection or respond to Ford's statements on the record. The following day, the district court allowed Moffatt to testify without additional comment. The Kirks did not object to Moffatt's testimony. They stipulated in front of the jury that the decedents were unbelted at the time of the accident. Similar to *Gunter* and *Karlson,* the Seat Belt Order was a qualified ruling on the admissibility of seat belt evidence. The Kirks and the district court were advised of the proposed evidence and the basis for its offer. The Kirks were required to renew their objection. They waived objection to the admission of seat belt evidence. The district court did not abuse its discretion in allowing the presentation of the evidence.

## IV.

## JURY INSTRUCTION NO. 11 WAS PROPER

■ The Kirks argue the district court improperly gave Jury Instruction No. 11 which stated:

> You may consider the fact that plaintiff's 1991 Navajo–Explorer was equipped with functional seat belts for the purpose of determining whether the overall design of the vehicle was unreasonably dangerous. However, you may not consider the use or non-use of seat belts in determining whether either Kyle Kirk or Bret Humphrey were negligent, in the sense of misuse of the product, or whether use or non-use of a seat belt caused either death.

The jury instruction is consistent with I.C. § 49–673(8). Apparently it was a curative attempt in light of the seat belt testimony. In any event, it appears the instruction was irrelevant to the jury's decision. The special verdict made these specific findings:

QUESTION NO. 1: Was defendant Ford Motor Company negligent?
ANSWER: Yes _____ No _✓__

QUESTION NO. 2: Is Ford Motor Company strictly liable for an unreasonably dangerous defective condition of the Navajo-Explorer?
ANSWER: Yes _____ No _✓__

QUESTION NO. 3: Did Ford Motor Company fail to adequately warn Kyle Kirk and/or Bret Humphrey?
ANSWER: Yes _____ No _✓__

As a consequence of the answers to the first three questions, no other questions were answered. The jury never reached the issue of any negligence by Kyle and Bret.

The Court presumes a jury will follow a proper limiting instruction. I.R.E. 105 (2004). Jury Instruction No. 11 was consistent with I.C. § 49–673(8). Further, the special verdict indicates that the jury never reached the issues covered by the instruction.

## V.

## THE DISTRICT COURT PROPERLY LIMITED BIDEZ'S REBUTTAL TESTIMONY

■ The Kirks argue that the district court compounded the error in its decision to

allow Moffatt to present seat belt evidence by limiting the testimony of their expert rebuttal witness, Bidez. Ford responds that the district court properly limited the testimony because it would have brought in a new claim of product defect and was contrary to the Seat Belt Order.

Bidez was permitted to testify that the occupants were dead prior to being ejected from the vehicle. The district court properly noted that the Kirks' remedy to Moffatt's testimony would have been to object at trial rather than attempt to proffer the inadmissible testimony of Bidez which would have added theories to the trial that were not a proper part of the case.

 Oral stipulations in the presence of the court and on the record are traditionally held binding. *Kohring v. Robertson,* 137 Idaho 94, 99, 44 P.3d 1149, 1154 (2002)(quoting *Conley v. Whittlesey,* 126 Idaho 630, 633, 888 P.2d 804, 807 (Ct.App.1995)). "A stipulation is a contract. The enforceability of an oral stipulation is determined by contract principles." *Id.* (quoting *Olson v. Idaho Dept. of Water Res.,* 105 Idaho 98, 100, 666 P.2d 188, 190 (1983) (citation omitted)). An enforceable contract requires "distinct understanding common to both parties ..." *Hoffman v. S V Co. Inc.,* 102 Idaho 187, 189, 628 P.2d 218, 220 (1981).

Prior to trial the Kirks orally stipulated that they would not bring any crashworthiness claims (i.e. allegations the restraint system was defective) against Ford. This stipulation was confirmed in a written correspondence between the Kirks' attorney and counsel for Ford. When attempting to offer the testimony of Bidez, the Kirks stated that Bidez would testify the seat belts in the vehicle were defectively designed. Such testimony would have been contrary to the Kirks' prior stipulation and written statements to Ford's counsel. The district court gave effect to these stipulations and refused to allow Bidez to testify that the vehicle's seat belts were defectively designed. Bidez was still permitted to testify that the occupants died prior to being ejected and that had they worn seat belts it would not have made a difference. The district court prop-erly limited Bidez' testimony. There was no abuse of discretion.

## VI.

## THERE WAS NO ERROR IN FAILING TO COMPEL PRODUCTION OF THE SUSPENSION ORDERS

 The Kirks assert that the district court misapplied the burden of showing privilege and argue that the Suspension Orders were not privileged under either the attorney-client privilege or work product doctrine. The Suspension Orders were directions from Ford's attorneys regarding the preservation of test data, the ADAMS data. Ford maintains that the Suspension Orders were properly protected as privileged and that the Kirks failed to preserve any error related to the Suspension Orders because they stipulated to a dismissal of their independent spoliation claim, failed to question Ford's witness regarding destruction of the ADAMS data, and failed to object to the lack of a jury instruction that an inference unfavorable to Ford could be drawn from destruction of the data.

Initially it is difficult to identify any prejudice in denying the motion to compel. Although the district court prohibited either the Kirks or Ford from referring to the Suspension Orders at trial, either party could elicit testimony regarding the ADAMS data and its destruction. Ford presented the testimony of an engineer who took part in compiling the ADAMS data. The Kirks did not attempt to question the engineer regarding the status of the ADAMS data as destroyed. Consequently they did not establish a foundation to request a jury instruction that the data could be inferred to be unfavorable to Ford. *See e.g. Bromley v. Garey,* 132 Idaho 807, 979 P.2d 1165 (1999)(remedy for alleged spoliation claim was a reasonable inference the documents destroyed were unfavorable to the opposing party). There was no spoliation claim left in the case.

 Even if relevant, the Suspension Orders were properly protected from discovery as privileged attorney-client communications. I.R.C.P. 26(b)(1) permits broad discovery of any matter that is not privileged,

**704**

even if it is inadmissible, so long as it is "reasonably calculated to lead to the discovery of admissible evidence." I.R.C.P. 26(b)(1)(2004). The burden of showing information is privileged, and therefore exempt from discovery, is on the party asserting the privilege. *Ex parte Niday*, 15 Idaho 559, 98 P. 845 (1908). The attorney-client privilege is described in I.R.E. 502(b), which states:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications made for the purpose of facilitating the rendition of professional legal services to the client* which were made (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the client's lawyer and the lawyer's representative, (3) *among clients, their representatives, their lawyers, or their lawyer's representatives, in any combination,* concerning a matter of common interest, but not including communications solely among clients or their representatives when no lawyer is a party to the communication, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

I.R.E. 502(b)(2004)(emphasis added); *Star Phoenix Mining Co. v. Hecla Mining Co.*, 130 Idaho 223, 232, 939 P.2d 542, 551 (1997). A communication is confidential where it is not intended to be disclosed to third parties, other than those third parties who are furthering the rendition of professional legal services to the client or who are necessary to transmit the confidential communication. I.R.E. 502(a)(5)(2004).

The district court held that it was unable to conclude as a matter of law that the attorney-client privilege applied to the Suspension Orders. Despite this remark, the district court found the Suspension Orders were not discoverable. This was a misapplication of the rule as articulated by I.R.C.P. 26(b)(1) and *Niday* in that the district court misapplied the burden of showing privilege and failed to make a finding whether the documents were privileged as a matter of law. Regardless, the district court's decision

may be affirmed on the grounds that the documents are protected by the attorney-client privilege doctrine. *McColm–Traska v. Baker*, 139 Idaho 948, 951, 88 P.3d 767, 770 (2004)(this Court may affirm a trial court's decision based on a correct theory even where the trial court's basis for judgment was erroneous).

The Suspension Orders were both confidential and for the express purpose of disseminating legal advice from Ford's OGC, to its client. The Suspension Orders were circulated to those Ford employees in charge of maintaining the company's records. There has been no indication or allegation that the Suspension Orders were relayed to third parties outside of the Ford company. *See also Courteau v. St. Paul Fire & Marine Ins. Co.*, 307 Ark. 513, 821 S.W.2d 45, 47 (1991) (an attorney's request relayed through corporate channels does not destroy the attorney client privilege). The Suspension Orders were for the purpose of rendering professional legal advice. Ford presented the Affidavit of Tim Quinlan, Ford's OGC, which established that the Suspension Orders contained legal advice and recommendations related to pending litigation. The Suspension Orders were not generated until a lawsuit was filed. They were in furtherance of rendering professional legal services. The Suspension Orders were kept confidential. They are protected from discovery under the attorney-client privilege. The decision to deny the Kirks' motion to compel was proper.

Because this Court finds the Suspension Orders are protected from discovery under attorney-client privilege, this Court does not address whether the documents are likewise privileged as attorney work product. *See, e.g. Chisholm v. Twin Falls County*, 139 Idaho 131, 136, 75 P.3d 185, 190 (2003) where the Court declined to address remaining issues as case was properly dispensed with on alternative grounds.

## VII.

## CONCLUSION

The judgment entered in the district court based upon the jury verdict is affirmed. Ford is awarded costs. Neither party re-

quested attorney fees on appeal and fees are not awarded.

Justices TROUT, EISMANN, BURDICK and JONES concur.