# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50078

STATE OF IDAHO, )
)
    Plaintiff-Appellant, )     Boise, June 2023 Term
)
v. )     Opinion filed: September 20, 2023
)
SHAWNA RAE PENDLETON, )     Melanie Gagnepain, Clerk
)
    Defendant-Respondent. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The judgment of the district court is <u>affirmed</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, for Appellant. Kenneth Jorgensen argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Justin Curtis argued.

_____

MOELLER, Justice.

This case presents this Court with yet another question of law regarding the performance of a police drug dog; however, this case centers on a defendant's right to discovery. Specifically, we are asked to determine whether a defendant has a right to compel the production of records regarding the past performance of a drug dog and the K-9 officer with whom the dog works.

Edo, a dog used by the Boise Police Department to detect controlled substances, alerted on Shawna Pendleton's vehicle during a traffic stop. Videos of the incident raised questions about the reliability of Edo's performance. Through a series of discovery requests, Pendleton sought additional videos and police reports from past stops to challenge Edo's reliability in detecting drugs. The district court, over repeated objections from the State, ultimately granted her motion to compel the evidence on finding it material to her defense.

On appeal, the State argues that the district court abused its discretion by denying its motion for reconsideration because: (1) Pendleton failed to establish that the requested evidence was material to her defense, (2) the production of four-months' worth of Edo's reports and videos was

1

unduly burdensome, and (3) not all of the requested evidence was within the prosecutor's possession, custody, or control. For the following reasons, we affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning of October 29, 2021, Boise police initiated a traffic stop on a vehicle with an expired registration driven by Shawna Pendleton, the owner of the vehicle. During the course of the traffic stop, Officer Miller arrived on the scene with his drug dog, Edo, and conducted an open-air sniff of Pendleton's vehicle. The dog immediately alerted and a search ensued. Police discovered methamphetamine, marijuana, Alprazolam (Xanax) pills, and a "gold grinder" with a green leafy residue. The State charged Pendleton with three counts of possession of a controlled substance in violation of Idaho Code section 37-2732(c), and one count of possession of drug paraphernalia in violation of Idaho Code section 37-2734A.

After viewing the body camera video of Edo's performance, Pendleton's attorney intended to file a motion to suppress the evidence found in her vehicle based on the theory that Edo's alert was unreliable; thus, it failed to provide probable cause for the search of her vehicle. In preparation for filing the motion to suppress, Pendleton served a discovery request on the prosecutor under Idaho Criminal Rule 16. She specifically sought the following information:

1. Any and all deployment/utilization tracking reports for K9 Edo

2. Any and all reports or field interview cards documenting where there was an alert, and no drugs contraband are found involving K9 Edo

3. All written reports of other drug sniffs performed by K9 Edo

4. Written copy of K9 Edo certification standards

5. Any information as to whether the Boise Police Department has ever changed the certifying body and if so, why the change occurred

6. Written score sheets from the judges or evaluators from every certification and/ or attempted certification of K9 Edo

7. Credentials of the judges or evaluators of K9 Edo's certification and/or attempted certifications

8. Written list of nomenclature used the team [sic] (K9 Edo and his handler)

9. Where K9 Edo was purchased

10. The method of training and reward used with K9 [Edo]

11. Any and all information regarding K9 [Edo's] initial training including his handler's written notes from initial training

2

12. Video of other sniffs performed by K9 [Edo] and his handler Officer Tad Miller.

13. The departments [sic] Standard Operating Procedures in regard to K9's and their training requirements to become and maintain certification.

In response, the State provided a training summary report and Edo's certification forms as a controlled-substance detection dog, but otherwise objected to the discovery requests, arguing that the "requested material is not in the prosecuting attorney's control, not relevant to the case at issue, unduly burdensome, and outside the scope of Idaho Criminal Rule 16."

Pendleton filed a motion to compel a full response to her discovery request. She informed the State that she had retained an expert and required additional information "for the expert to render an opinion as to the reliability of the dog sniff in this case." Attached to her motion was a letter from the Federal Defender Services of Idaho, which explained that the U.S. Attorney's Office "routinely provide[s]" them a variety of materials "from a number of different Idaho state and local police agencies." When challenging a drug dog's reliability, they explained how they typically receive:

- The canine's POST certification diploma, POST renewal certification letters and POST certification forms.

- Police department policies, procedures and/or directives pertaining to the agency's canines.

- The police department's training logs and training reports for the canine. Training reports vary from agency to agency, but typically contain a description of the training exercise and some notation on the dog's performance. Generally, receiving approximately a year of these records.

- Deployment logs or reports and police reports for the canine's deployments surrounding the canine deployment at issue in the case.

- Deployment logs/reports typically detail field deployments of the canine that did not result in a criminal charge, while police reports are provided when the deployment led to charges. Information concerning the subject of the stop is typically redacted. Again, generally receiving approximately a year of these records.

The district court granted Pendleton's motion in part and denied it in part. The district court first considered the evidence sought as a whole. It determined that "[w]ith the right to challenge the prosecutor's certification-and-training evidence comes the right to require the prosecutor to produce certification-and-training records, including the 'handler's log, as well as training records and score sheets, certification records, and training standards and manuals pertaining to the dog.' " (Citing *United States v. Thomas*, 726 F.3d 1086, 1096 (9th Cir. 2013) and quoting *United States*

3

*v. Cedano–Arellano*, 332 F.3d 568, 570–71 (9th Cir. 2003)). While the district court found it had no "way to determine whether the prosecutor's initial production comprises all existing records of this sort that concern Edo and are in the prosecutor's possession, custody, or control," the prosecution was required to produce the same type of records as were required in *Thomas*. In contemplating whether a drug dog's field-performance tests are discoverable, the district court concluded that "a showing of materiality must be made before the production of field-performance records will be ordered." Inasmuch as Pendleton had not made such a showing, the court concluded that Pendleton had not "identified any reason to doubt Edo's training or the propriety of Edo's certification as a controlled substance detection dog, nor has she pointed to anything irregular about the ostensible alert in this case."

Pendleton filed a renewed motion to compel, alleging that "there are still additional training documents that are related to Edo which the state has deemed not material and elected to not disclose." She reiterated that she had consulted an expert in the matter to evaluate Edo's performance and to help determine whether a motion to suppress was warranted. Her expert, Jerry Potter, "noted that there are concerning behaviors throughout the sniff which require the additional documents requested to properly evaluate" and "that the field-performance rescored [sic] are material in evaluating the K9's alert." Of concern to Potter were several video recordings of Edo's prior vehicle sniffs, which were not provided by the State but had been personally collected by Pendleton's attorney. The recordings showed a pattern of Edo proceeding directly to car door handles, sniffing briefly, and then seeking immediate confirmation from the handler. Potter explained:

> I need to review the detailed training documents to determine how Edo is trained to search vehicles. Also, I need to review the utilization reports to determine if [Edo's] alert percentages align with either a training issue in that Edo has been conditioned to alert to every vehicle he sniffs, or if there is an action being performed by [the officer], either consciously or subconsciously, that is allowing handler bias to affect the dog.

In response, the State produced the canine directives for the Boise Police Department, but again objected to Pendleton's motion to compel evidence on the same grounds as before. The State argued that the requested information was a "generic blanket request for any and everything," and that many of the specific requests were "not material, not in the prosecuting attorney's control, not relevant to the case at issue, unduly burdensome, and outside the scope of Idaho Criminal Rule 16."

4

The district court held a hearing on Pendleton's renewed motion to compel on July 13, 2022. Prior to the hearing, the district court reviewed the defense's collection of videos showing prior dog sniffs performed by Edo. After listening to arguments, the court noted that the State and Pendleton were in some agreement as to the discoverability of specific documents that had been recently produced in another criminal case involving Edo. The district court directed the State to produce those documents. When it came to field-performance records from other cases, the district court determined that Pendleton had shown the field-performance records were material to her defense. In a ruling from the bench, the district court granted Pendleton's motion to compel the evidence, and ordered the State to produce "one year going backward from this sniff, vehicle sniff videos involving this dog [Edo] and the associated handler's reports."

The district court's decision in granting Pendleton's motion relied significantly on the body cam footage of Edo's prior sniffs for contraband, the court's concern that Edo never appeared to actually sniff Pendleton's vehicle, and the expert's concerns that Edo may be "conditioned to behave in this way." The district court explained:

> . . . what I see is a dog walking straight to a door seam, looking at the handler, being directed around to the other side of the vehicle, doing the same thing on the other side of the vehicle, and then that's the end, and there's a determination that -- by the handler that the dog has alerted, which that may well be the case, but what you don't see in the video, and what's of concern to me that we don't see as just a person who has had dogs as pets and seeing dogs, you don't see anything that looks like deliberate sniffing or tracking an odor. That, while I suppose it might have occurred, it's not evident from the video that it occurred.

> I suppose a simple way of putting it is it's not that obvious to me, from looking at the video, that the dog's working. It's just not evident. . . . looking at the video, I have concerns about whether this dog is just doing what he thinks he needs to do to get his reward or whether he indeed is tracking an odor and then alerting to the odor.

In a later status conference, the State informed the district court that it planned to file a motion to reconsider and "wanted to present expert testimony in support of its planned motion to reconsider, hoping to show that Edo's field-performance records are not material to the preparation of the defense, despite what Potter may say about why seeing them would be useful to him." In short, as the district court summarized, the State wanted to hold an "evidentiary hearing on whether documents or tangible objects are discoverable," which "struck the [c]ourt as a novelty." On August 10, 2022, the State filed its motion to reconsider "and/or to set a contested hearing date" on the motion to reconsider. Pendleton responded that "the court should not create a rigid set of

requirements to evaluate a K9," but that case law indicated certain records could be relevant in challenging a drug dog's reliability, including field records, the handler's log, training records, score sheets, certification records, and training standards and manuals pertaining to the dog in accordance with *Florida v. Harris*, 568 U.S. 237, 244–47 (2013), and *United States v. Thomas*, 726 F.3d 1086, 1096 (9th Cir. 2013).

A hearing was set and both sides prepared for expert testimony as to whether Edo's field-performance records were material to the preparation of Pendleton's defense. However, the district court declined to hear testimony on that issue, explaining that such a hearing would "inevitably . . . have been pre-trying an unfiled motion to suppress challenging the reliability of Edo's alert." The materiality issue was instead addressed based on the record already established, and the district court only heard arguments on the State's motion to reconsider.

After taking the matter under advisement, the district court granted the State's motion in part and denied it in part. It clarified and narrowed the scope of its earlier disclosure order from the bench, decreasing the required production from one year's worth of records to four months. The district court informed the prosecutor that he had six weeks to disclose specific records concerning "each vehicle sniff conducted by Edo in the field during the four-month period preceding" Pendleton's arrest, including:

> (1) any handler on-body video of the sniff; (2) any report the handler prepared on the sniff; and (3) any police reports describing any vehicle search conducted after the sniff. This disclosure obligation is limited to records in the Boise Police Department's possession, custody, or control, which, as noted above, are deemed to be in the prosecutor's possession, custody, or control.

In reaching its decision, the district court concluded that Edo's field-performance records were material to the preparation of the defense and were in the prosecutor's possession, custody, or control. The court explained that it would be unreasonable to require a prosecutor to manually review all case files to identify prior prosecutions involving Edo, and noted that Edo's field work "presumably does not always result in a request that the prosecutor file charges." Yet, because the Boise Police Department held possession, custody, and control over Edo's field-performance work—and it was the investigative agency working with the prosecutor in Pendleton's case—the prosecutor was deemed to also have possession, custody or control of Edo's field-performance records and the information "material to the preparation of the defense."

The State moved for permissive appeal, which the district court denied. Attached to this motion for permissive appeal was the full "PackTrack Report," including Edo's training summary,

6

training logs, deployment summary, deployment logs, and training odor list—evidence which the State also relied on at the hearing. The State then filed a motion for permissive appeal with this Court, which was granted and expedited. The State timely filed its notice of appeal.

## II. STANDARDS OF REVIEW

Supervision of discovery is a discretionary power of the trial court. *Quigley v. Kemp*, 162 Idaho 408, 410, 398 P.3d 141, 143 (2017); *Kirk v. Ford Motor Co.*, 141 Idaho 697, 700–01, 116 P.3d 27, 30–31 (2005). "Trial courts have broad discretion over the admission of evidence at trial, including expert testimony, and in determining whether or not to grant a motion to compel." *Kirk*, 141 Idaho at 700, 116 P.3d at 30. Accordingly, "a trial court's decision to grant or deny a motion to compel will only be reversed when there has been a clear abuse of discretion." *Quigley*, 162 Idaho at 410, 398 P.3d at 143. A trial court has not abused its discretion where it "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Additionally, where this Court reviews a lower court's decision regarding a motion for reconsideration, it applies the same standard of review the lower court used to decide the motion. *Savage v. State*, 170 Idaho 367, 371, 511 P.3d 249, 253 (2022); *Cover v. Idaho Bd. of Corr.*, 167 Idaho 721, 727, 476 P.3d 388, 394 (2020).

## III. ANALYSIS

At its heart, this case pertains to the scope of allowable discovery in a criminal case and when records are deemed to be in the State's "possession, custody, and control." After granting the State's motion for reconsideration of its discovery order in part, and denying it in part, the district court ordered the prosecution to disclose specific records regarding "each vehicle sniff conducted by Edo in the field during the four-month period preceding" Pendleton's arrest, including "(1) any handler on-body video of the sniff; (2) any report the handler prepared on the sniff; and (3) any police reports describing any vehicle search conducted after the sniff."

Pendleton sought this evidence under Idaho Criminal Rule 16(b)(4), which requires that upon written request of the defendant, the State must provide copies of documents or tangible objects that "are material to the preparation of the defense" and "are in the possession, custody or control of the prosecuting attorney." The State contends that the district court abused its discretion

7

because (1) Pendleton failed to establish the requested evidence is material to the defense, (2) the production of four months' worth of Edo's reports and videos is unduly burdensome, and (3) not all of the requested evidence is within the prosecutor's possession, custody, or control. We will address each issue in turn.

**A. The district court did not abuse its discretion in determining that Pendleton made a sufficient showing that the requested records are material to the preparation of her defense.**

Pendleton seeks discovery of evidence regarding Officer Miller's and Edo's training and performance to aid her expert witness and prepare a potential motion to suppress. Because a suppression motion could ultimately exclude incriminating evidence otherwise admissible at trial, evidence from discovery that supports her motion to suppress could "significantly alter the quantum of proof" in Pendleton's favor. *Id.* at 350–51. Likewise, evidence of Edo's reliability could play an important role in uncovering admissible evidence, aiding expert witness preparation, assisting in impeachment, or even in corroborating the potential testimony of Officer Miller (or other police). More specifically, Pendleton seeks the field records and videos from the Boise Police Department to establish whether Edo has been preconditioned to alert on all vehicles—a reliability challenge that requires an examination of how Edo typically behaves in the field. Thus, based upon the information before it—which included other sniffs by Edo that displayed a similarly concerning pattern—we must determine whether the district court abused its discretion in determining that Pendleton made a proper showing that the sought-after evidence was "material to the preparation of the defense." I.C.R. 16(b)(4).

Under the Idaho Criminal Rules, a defendant may request certain evidence and materials from the prosecution, including copies of documents and tangible objects that "are material to the preparation of the defense." I.C.R. 16(b)(4). Materiality in this context has not been defined by the Idaho Criminal Rules, nor by Idaho's case law. However, the Federal Rules of Criminal Procedure provide a similar right to the defendant for the discovery of documents that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Where a federal rule is identical in material respects to an analogous Idaho rule, this Court may look to decisions on the scope of the federal rule for guidance on interpreting our Idaho rule. *Brauner v. AHC of Boise, LLC*, 166 Idaho 398, 408, 459 P.3d 1246, 1256 (2020); *Martin v. Hoblit*, 133 Idaho 372, 376 n.3, 987 P.2d 284, 288 n.3 (1999) (citing *Compton v. Compton*, 101 Idaho 328, 334, 612 P.2d 1175, 1181 (1980)).

The Ninth Circuit explains that "materiality" is a "low threshold . . . satisfied so long as the information . . . would have helped to prepare a defense." *United States. v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (internal quotation marks omitted) (quoting *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013)). To show materiality under the federal rules "the defendant must demonstrate that the requested evidence bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor." *United States v. Lloyd*, 992 F.2d 348, 350–51 (D.C. Cir. 1993) (alteration in original) (citations omitted). The "evidence is material as long as there is a strong indication that it will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " *Id.* at 351 (quoting *United States v. Felt*, 491 F.Supp. 179, 186 (D.D.C.1979)).

The State points to the United States Supreme Court's decision in *Florida v. Harris*, arguing that Pendleton failed to demonstrate that the sought-after evidence was material under the *Harris* standard. It relies, in part, on this Court's statement that "[a] reliable drug dog's alert, standing alone, is sufficient to establish probable cause for a warrantless search of a car." *State v. Howard*, 169 Idaho 379, 383, 496 P.3d 865, 869 (2021). *See also Harris*, 568 U.S. at 246–47 ("evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert"). However, our holding in *Howard* was based on "a reliable drug dog's alert." We did not foreclose the possibility that further proof may be necessary when the dog's reliability is genuinely at issue. In *Harris*, the Supreme Court recognized that a defendant "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Harris*, 568 U.S. at 247. Furthermore, "a probable-cause hearing focusing on a dog's alert should proceed much like any other," with the trial court "allow[ing] the parties to make their best case, consistent with the usual rules of criminal procedure." *Id.* The trial court "should then evaluate the proffered evidence to decide what all the circumstances demonstrate." *Id.* at 247–48.

The United States Supreme Court has rejected rigid requirements to assess the reliability of a drug dog, explaining that "a strict evidentiary checklist" is "the antithesis of a totality-of-the-circumstances analysis." *Id.* at 244–45. However, the Supreme Court has offered examples of how a defendant may challenge a drug dog's reliability, including "contest[ing] the adequacy of a

certification or training program, perhaps asserting that its standards are too lax or its methods faulty." *Id.* at 247. A defendant may also "examine how the dog (or handler) performed in the assessments made in those settings," including "evidence of the dog's (or handler's) history in the field." *Id.* Even where a drug dog "is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause—if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.* The Idaho Court of Appeals has similarly proffered examples of how a defendant may challenge a drug dog's reliability and emphasized the trial court's responsibility to consider "a variety of elements" in making drug dog reliability determinations:

> "In our view, trial courts making drug dog reliability determinations may consider a variety of elements, including such matters as the dog's training and certification, its successes and failures in the field, and the experience and training of the officer handling the dog. Under the totality of circumstances, the court can then weigh each of these factors."

*State v. Yeoumans*, 144 Idaho 871, 875, 172 P.3d 1146, 1150 (Ct. App. 2007) (quoting *State v. Nguyen*, 726 N.W.2d 871, 877 (S.D. 2007)).

While the State is correct that "[a] dog's field performance is not necessarily relevant in every dog-sniff case," the State ignores language in *Harris* and the unique facts of Pendleton's search that made Edo's search history material. Both *Harris* and *Yeoumans* specifically recognized evidence of "a dog's (or handler's) history in the field" as one potential source of evidence for challenging a dog sniff. *Harris*, 568 U.S. at 247; *Yeoumans*, 144 Idaho at 875, 172 P.3d at 1150. While *Harris* was undoubtedly critical of the Florida Supreme Court's overreliance on field-performance data, *Harris* did not bar the use or discovery of such records. *Harris*, 568 U.S. at 245. The *Harris* Court explained that "in most cases" field-performance records have "relatively limited import" because the data is susceptible to misinterpretation, with the potential to not capture a dog's false negatives, overstate a dog's real false positives, and ultimately skew records of a dog's performance. "The better measure of a dog's reliability," the Supreme Court explained, "comes away from the field, in controlled testing environments." *Id.* at 246–47. Nevertheless, despite the fact that field-performance records are "susceptible to . . . misinterpretation," the Supreme Court still concluded that field data "may sometimes be relevant." *Id.* at 247.

Although two federal circuits have applied *Harris* in the context of a defendant seeking field-performance data through discovery and in preparation of the defense to challenge a dog's reliability, their outcomes are varied. Nevertheless, both largely interpreted *Harris* as not requiring

10

field-performance records while also affording district courts discretion in determining whether the evidence is relevant to the probable cause inquiry.

In *United States v. Foreste*, the Second Circuit determined that the district court abused its discretion in denying the defendant's request for field-performance records on the basis that they "don't tell you anything." 780 F.3d 518, 529 (2d Cir. 2015) (alteration omitted). The *Foreste* court explained that "*Harris* counsels caution, but it does not dictate an about-face from [the Second Circuit's] long-standing position that a canine's field performance is relevant to the probable cause inquiry." *Id.* Therefore, the district court's view that field-performance records were outright unreliable was found to be an erroneous view of the law. *Id.* While such records are not required to prove probable cause, the court concluded that the government should have turned over the dog's field-performance records in response to the defense's discovery request and preparation for challenging the drug dog's reliability. *Id.* at 527–29.

In slight contrast, courts within the Eighth Circuit have concluded that field-performance records are not necessary to find probable cause, and to get them a defendant must offer some showing that calls the particular alert into question. *United States v. Gunnell*, 775 F.3d 1079, 1085 (8th Cir. 2015) (the defendant "failed to contest" the reliability of the dog's performance in controlled testing environments and "offered nothing to call into question the particular alert at issue in this case"); *United States v. Salgado*, 761 F.3d 861, 867 (8th Cir. 2014) (after finding the dog reliable on evidence of training and certification, there was no abuse of discretion in denying the defendant access to "minimally probative field-performance records" for the purpose of cross-examination); *United States v. Trejo*, 135 F. Supp. 3d 1023, 1036 (D.S.D. 2015) ("If there are peculiar circumstances to justify discovery of [the dog's] field-performance records, the magistrate judge may order the government to produce them.").

In reviewing Pendleton's discovery request and her subsequent motion to compel, the district court properly recognized that a showing of materiality was required for the records to be produced by the State. The district court concluded that Pendleton met her burden to establish materiality and reiterated this holding in granting Pendleton's motion to compel production of the sought-after evidence and in denying the State's motion for reconsideration. We conclude that these decisions were in line with *Harris* and do not constitute an abuse of discretion.

While the U.S. Supreme Court has expressed concern that such data can be susceptible to misinterpretation, it has also explained that the field-performance evidence may be relevant to a

determination of probable cause in certain cases. *Harris*, 568 U.S. at 246–47. Likewise, the circumstances surrounding a particular alert may "undermine the case for probable cause." *Id.* at 247. Here, the district court determined that such circumstances exist where video footage of Edo's alert raised concerns that Edo was not "working," but was potentially reacting to handler bias—whether conscious or unconscious. In short, the district court became concerned over evidence that suggests Edo has been conditioned to alert, creating a Pavlovian response rather than a reliable sniff.

The State also argues that Pendleton's discovery request was met because her expert, Potter, requested "utilization reports," which the State had already supplied. It argues that "[f]ield performance records and videos and police reports are not the same thing," and that the district court erred in ordering the production of four months' worth of Edo's "field-performance records" to better assess the court and the expert's concerns about handler bias and dog conditioning. While the State is correct that Potter technically requested "utilization reports," he was generally seeking data "to determine if Edo['s] alert percentages align with either a training issue in that Edo has been conditioned to alert to every vehicle he sniffs, or if there is an action being performed by Miller, either consciously or subconsciously, that is allowing handler bias to affect the dog." Potter also explained that the training reports supplied by the State were insufficient because they "[did] not provide any valuable information . . . to form an opinion on whether or not a dog is properly trained." Likewise, Pendleton's original discovery request and renewed motion to compel specifically sought "field-performance" records, "video of other sniffs," and "written reports of other drug sniffs performed by K9 Edo," arguing that they were "material in evaluating the K9's alert." Her renewed motion to compel the production of multiple reports requested "additional training documents . . . related to Edo which the [S]tate has deemed not material and elected to not disclose." Pendleton's expert communicated a need to analyze Edo's training records *and* field work to determine whether handler bias is affecting the dog and where the district court is concerned Edo may not be "working."

In light of the totality of the circumstances present here, we affirm the district court's decision that Pendleton met her burden in establishing that the evidence sought is material to the preparation of her defense. I.C.R. 16(b)(4). The district court did not abuse its discretion by permitting further discovery because its decision (1) was reached through the exercise of reason after considering the expert's concerns and reviewing Edo's videos, (2) demonstrated the

12

application of proper legal standards, (3) was recognized by the court as discretionary, and (4) made within the bounds of its discretion. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Accordingly, we conclude that there was no abuse of discretion in determining that materiality had been shown pursuant to Idaho Criminal Rule 16(b)(4).

**B. The State has failed to show that the production of four months' worth of Edo's records is unduly burdensome.**

The State next argues that "requiring production of four months of videos and police reports of Edo's deployments for vehicle sniffs is wildly out of proportion to the potential usefulness of the evidence." The State contends that this "overly burdensome" discovery order is an abuse of discretion. Pendleton argues that the State was already granted relief by limiting the order to four months' worth of records (instead of a full year), and that law enforcement agencies regularly provide a full year's worth of records to federal courts. She contends that since one year is the standard practice, then only four months cannot be unduly burdensome. We agree with Pendleton that the State has failed to show an abuse of discretion.

The rules of discovery were designed to safeguard the truth-seeking functions of trials, to promote fairness and candor, to facilitate fair and expedient pretrial fact gathering, and to prevent surprise at trial. *State v. Morin*, 158 Idaho 622, 626, 349 P.3d 1213, 1217 (Ct. App. 2015). *See also Edmunds v. Kraner*, 142 Idaho 867, 878, 136 P.3d 338, 349 (2006) (discussing the same purposes for the civil rules governing discovery). The rules "must be construed to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." I.C.R. 2(a). However, discovery can be limited. "[A] court can limit the extent of discovery if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Oswald v. Costco Wholesale Corp.*, 167 Idaho 540, 561, 473 P.3d 809, 830 (2020) (internal quotation marks omitted).

As Pendleton notes in her briefing, the State provides no details or context for how or why the discovery order in this case is burdensome, let alone unduly so. For example, it offers nothing regarding the needs of the case, the time or burden required to compile the records from the Boise Police Department, or the impact on the affected organizations' resources. It also makes no mention of unjustifiable expenses or delays. There is no factual record before us to suggest that this discovery request is unduly burdensome, particularly when the district court has already granted the State relief by limiting the scope of the records to four months' worth of Edo's searches

13

with the Boise Police Department. Accordingly, we conclude that the State has failed to show an abuse of discretion by the district court.

**C. The district court did not abuse its discretion in determining that the videos and police reports in question were within the prosecuting attorney's possession, custody, or control.**

Finally, the State argues that while "the prosecutor has express or implied possession, custody, or control of police videos and reports generated as part of the investigation of this particular case, it was error for the district court to impute possession, custody, or control of *all* police videos and *all* police reports regardless of any connection to the case." Pendleton responds that the "prevailing view" of interpreting "possession, custody, or control," is that it "includes materials in the hands of a governmental agency closely connected to the prosecutor." In comparing Idaho Criminal Rule 16(b)(4) with its federal counterpart, the district court concluded that the Ada County prosecutor "would be deemed to have possession, custody, or control of Edo's field-performance records to the extent they are in the possession of the Boise Police Department." We agree.

Pursuant to Idaho Criminal Rule 16(b)(4), the State "must," upon written request from the defendant, turn over any documents "that are in the possession, custody or control of the prosecuting attorney" and "(A) are material to the preparation of the defense, (B) are intended for use by the prosecutor as evidence at trial, or (C) were obtained from the defendant or belong to the defendant." This Court has not had an opportunity to address the meaning of the language "possession, custody or control of the prosecuting attorney," and whether that includes records in possession of law enforcement agencies. However, as noted above, the federal counterpart to Idaho Criminal Rule 16(b)(4) has nearly identical language that permits a defendant to request documents and tangible objects "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

Some federal courts have found that "the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor." *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003). *See also United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir. 1978) ("Nor is the government excused from its obligation by the fact that the documents were in the possession of

14

the FBI prior to trial."); *United States v. Ghailani*, 687 F. Supp. 2d 365, 372 (S.D.N.Y. 2010) (DOJ officials were "sufficiently involved with the prosecution" to be properly considered "the government" under Rule 16); 2 *Orfield's Criminal Procedure Under the Federal Rules* § 16:25 ("the 'possession, custody, or control of the government' requirement includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor"). Another federal jurisdiction has indicated that "appellate authority" does not generally equate "government" with local law enforcement for the purposes of Rule 16 discovery. *United States v. Poulin*, 592 F. Supp. 2d 137, 142 (D. Me. 2008).

In the Ninth Circuit, "the scope of the government's obligation" under the criminal discovery rule turns on "the extent to which the prosecutor has knowledge of and access to the documents." *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citing *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)). "Documents held by another executive branch agency are deemed to be 'in the possession of the government' if the prosecutor has 'knowledge of and access to' the documents." *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (citing *Bryan*, 868 F.2d at 1036). While the prosecutor is not required to "comb the files of every federal agency," "[k]nowledge and access are presumed *if the agency participates in the investigation* of the defendant." *Id.* (emphasis added). *See also Bryan*, 868 F.2d at 1036 ("The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."). Because prosecutors hold a "unique position to obtain information known to other agents of the government," they "have an obligation to disclose what they do not know but could have learned." *Cano*, 934 F.3d at 1023 (quotation marks and brackets omitted). This includes information from "investigating police officers, and sometimes extends to information held by other executive branch agencies." *Id.* (citations omitted).

State courts have similarly extended the scope of their "possession, custody or control" prerequisites to records held by investigating agencies working in conjunction with the prosecution to investigate and try a defendant.

> State courts interpreting "scope" clauses that do not refer specifically to investigating agencies have interpreted those clause [sic] as implicitly extending to items within the files of all those investigative agencies of the state that have participated in the development of the particular prosecution. Their files are deemed within the "control" of the prosecutor under provisions that refer to the "prosecution," or as items within the possession of the "government" that should

be known to the prosecutor under the federal-type provision. Some courts have held that the prosecutor's control extends to records in the possession of "any . . . prosecutor or law enforcement office" of the particular state, whether or not involved in the investigation or ordinarily reporting to the particular prosecutor.

5 Wayne R. LaFave et al., Criminal Procedure § 20.3(a) (4th ed. 2022). *See also Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011) ("We have held that the duty of disclosure applies not only to the prosecutor's office, but also to all other investigative agencies of the government."); *Chambers v. People*, 682 P.2d 1173, 1180 n.13 (Colo. 1984) ("the prosecutor's duty of disclosure extends to material and information in the possession or control of all law enforcement agencies which 'have participated in the investigation or evaluation of the case and [which] either regularly report, or with reference to the particular case have reported, to his office.' " (alteration in original) (quoting Colo. R. Crim. P. 16(1)(a)(4)); *State v. Crews*, 252 S.E.2d 745, 752 (N.C. 1979) (discussing N.C. Gen. Stat. § 15A-903(d) (1979)) (" 'Within the possession, custody, or control of the State' as used in these provisions means within the possession, custody or control of the prosecutor or those working in conjunction with him and his office.").

The reasons for this approach are at least twofold. First, law enforcement agencies typically work closely with the prosecution arm of the state to investigate and try criminal activity. As the Court of Appeals in Wisconsin explained:

> For purposes of the criminal discovery statutes, we view an investigative police agency which holds relevant evidence as an arm of the prosecution. In most criminal cases, the evidence against the accused is garnered, stored and controlled by the investigating police agency. Depending upon local practice, many courts and district attorneys entrust the custody and control of such material to the police even after it has been elevated to formal evidentiary status in a criminal proceeding.

*State v. Martinez*, 479 N.W.2d 224, 229 (Wis. Ct. App. 1991). Second, even where courts have concluded that law enforcement is *not* an arm of the prosecution, they have expressed concern for potential "mischief" and "gamesmanship" in the discovery process—especially in the context of *Brady* violations[1]—because prosecution teams can keep evidence out of a defendant's hands simply by leaving it in the possession and control of another agency. *United States v. Marshall*,

---

[1] Allegations that the prosecution failed to disclose material evidence are governed by *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "Under *Brady*, the government violates its constitutional duty to disclose material exculpatory evidence where (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression (i.e., the evidence is 'material')." *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (internal quotation marks and brackets omitted) (citation omitted).

132 F.3d 63, 69 (D.C. Cir. 1998); *United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995); *Bryan*, 868 F.2d at 1036; *Poulin*, 592 F. Supp. 2d at 142–43. In *Marshall*, the District of Columbia Circuit determined that such circumstances plainly put the evidence within the prosecutor's "control" under Rule 16. 132 F.3d at 69.

We agree with the prevailing authority that if a law enforcement agency is involved in the prosecution of a defendant, then that agency's records—which are material to that defendant's guilt or innocence—are effectively within the possession, custody, or control of the prosecutor. *Cano*, 934 F.3d at 1023. While the prosecutor is not required to "comb the files of every . . . agency," the prosecutor's possession, custody, or control of the evidence may be presumed "if the agency participates in the investigation of the defendant." *Id.* Or, as the Court of Appeals in Wisconsin articulated, the investigating police agency holding relevant and material evidence acts as an "arm of the prosecution" for the purposes of criminal discovery statutes. *Martinez*, 479 N.W.2d at 229.

Here, the Boise Police Department is the agency working in conjunction with the prosecutor on Pendleton's case. The Boise Police investigated, arrested, and detained Pendleton. It is the law enforcement agency that employs Edo and his handler, Officer Miller. It possesses Edo's training records, certifications, and all field data relevant to Pendleton's case as well as her discovery request, including videos and reports of Edo's other vehicle sniffs in past and pending criminal investigations. Because the Boise Police Department is a law enforcement agency acting as an arm of the prosecution to investigate and try Pendleton, its records regarding Edo's past performance are within the possession, custody, or control of the prosecutor for the purposes of criminal discovery. Therefore, we affirm the district court's determination that the prosecutor here had possession, custody, or control of Edo's field-performance records and the information is "material to the preparation of the defense." There was no abuse of discretion by the district court in applying this prevailing authority and reaching its decision through an exercise of reason.

We note that our holding today is limited and does not create a blanket right to a defendant's discovery of any and all law enforcement records. Nor do we suggest that the scope of discovery permitted in this case should be allowed in every case involving a dog sniff. The circumstances and showings in this case—as with every case—are unique, and our holding today should only be applied with careful circumspection. Therefore, we leave it to the trial courts to exercise their informed and reasoned discretion in (1) determining whether a defendant has made

the requisite showing that the sought-after evidence is "material to the preparation of the defense," I.C.R. 16(b)(4), (2) ensuring that requests are not unduly burdensome to the prosecution, and (3) ascertaining whether the requested records are in the possession of an agency that participated in the investigation of the defendant.

## IV. CONCLUSION

We conclude that the State has failed to show an abuse of discretion in compelling production of the videos and reports regarding Edo and his handler for the four months prior to Pendleton's arrest. We affirm the district court's determination that the evidence sought by Pendleton was material, not unduly burdensome, and in the "possession, custody or control" of the prosecution pursuant to Idaho Criminal Rule 16.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**